IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01603-GPG

JOSE PENA-OLAGUE,

    Plaintiff,

v.

LOUIS CABLING, CCCF Physician Provider, in his official and individual capacities,
CORRECTIONAL HEALTH PARTNERS (CHP),
MICHAEL MILLER, CCCF Warden, in his official and individual capacities, and
RICK RAEMISCH, CDOC Prison Director, in his official and individual capacities,

    Defendants.

---

ORDER DIRECTING PLAINTIFF TO FILE AMENDED COMPLAINT

---

    Plaintiff, Jose Pena-Olague, is in the custody of the Colorado Department of Corrections (CDOC) at the Crowley County Correctional Facility (CCCF) in Olney Springs, Colorado. He has filed a Prisoner Complaint, pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983, claiming that he is being denied adequate medical care in violation of the Constitution. Mr. Pena-Olague has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

    The Court must construe the Prisoner Complaint liberally because Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not act as an advocate for *pro se* litigants. *See Hall*, 935 F.2d at 1110. The Court has reviewed the Complaint and has determined that it is deficient. For the reasons discussed below, Mr. Pena-Olague will be ordered to file an amended complaint.

    Plaintiff alleges that he has suffered a "Leaking Arterial Bleed" (LAB) in the left

subdermis of his scalp for approximately 18 months, a condition that resulted after he was hit on the side of the head by a heavy security door during a wind gust in March 2014. (ECF No. 4 at 3). Plaintiff requested a physician exam a few days after the incident because a "pulpish bulb" had developed on his head. (*Id.* at 4). Plaintiff was examined by Defendant Dr. Cabling approximately six weeks later. Dr. Cabling ordered x-rays as a "precautionary measure." (*Id.*). When Plaintiff asked for the x-ray results, a nurse conveyed a message from Dr. Cabling that "[plaintiff] was fine." (*Id.*). Plaintiff alleges that the bulb on his head throbbed with pain whenever he exercised or went outside in the sunshine, and sometimes migrated towards his left forehead. He continued to file medical kites, and was ultimately scheduled for an MRI by another physician. Defendant Dr. Cabling later informed Plaintiff that he had received the results of the MRI, and that Plaintiff was "fine." (*Id.* at 5). However, Plaintiff's condition worsened and sometime in 2015 he was referred to an eye specialist in Pueblo, Colorado, who diagnosed the LAB, told Plaintiff that it was "a serious and potentially dangerous condition," and recommended surgery to repair it. (*Id.* at 6). Defendant Dr. Cabling thereafter advised Defendant Colorado Health Partners (CHP) that he approved Plaintiff for the recommended surgery, but CHP rejected the surgery request. No explanation was given for the denial. Plaintiff alleges that he remains in constant pain and is unable to exercise, that the LAB now "horseshoe[s]" around both sides of his head, and that blood droplets seep through his skin pores if he exercises or is exposed to sunshine. (*Id.* at 7). Sometime in August 2015, Defendant Dr. Cabling submitted a second request to CHP to authorize the recommended surgery, but the

request was once again denied.  Mr. Pena-Olague seeks injunctive and declaratory relief.

The Prisoner Complaint is also deficient because Mr. Pena-Olague fails to allege specific facts to show the personal participation of the CCCF Warden and the CDOC Executive Director in a deprivation of his constitutional rights.  Personal participation is an essential element of a civil rights action.  *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  A supervisor can only be held liable for his own deliberate intentional acts.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("[Section] 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation.").  Plaintiff does not allege facts to show that Defendants Miller and Raemisch have been personally involved in decisions concerning his medical care at the CCCF.  Instead, he seeks to hold them liable because of their supervisory roles, which is inappropriate under § 1983.

With regard to Defendant CHP,[1] "'[t]he established principles of municipal liability have been found to apply to § 1983 claims brought against private corporations [that contract with prisons to provide medical care to inmates]." *Ortiz v. Falk*, No. 13-cv-00612-PAB-MJW, 2014 WL 984933, at *10 (D. Colo. March 13, 2014) (quoting *Rhodes v. Physician Health Partners (PHP)*, No. 09-cv-482-REB-KLM, 2010 WL 728213, at *5 (D. Colo. Feb. 24, 2010)). "Therefore, according to the principles of municipal liability, a private actor such as CHP 'cannot be held liable solely because it employs a tortfeasor-or, in other words . . . cannot be held liable under § 1983 on a respondeat superior theory.'" *Id*. (quoting *Monell v. Dep't of Social Servs*., 436 U.S. 658, 691 (1978)). Instead, Plaintiff must allege facts to show that Defendant CHP directly caused the constitutional violation by instituting an official policy or custom that was the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694-95; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Plaintiff cannot state a claim for relief under § 1983 merely by pointing to isolated incidents. *See Monell*, 436 U.S. at 694. In the amended complaint, Mr. Pena-Olague should allege whether a policy or custom of CHP caused the alleged deprivation of adequate medical care, if Plaintiff is aware of such information. Accordingly, it is

ORDERED that Plaintiff file **within thirty (30) days from the date of this order,** an amended complaint that complies with the directives in this order. It is

FURTHER ORDERED that Plaintiff shall obtain the court-approved Prisoner Complaint form (with the assistance of his case manager or facility's legal assistant), along with the applicable instructions, at www.cod.uscourts.gov. It is

---

[1] The CDOC contracts with a private entity, Physician Health Partners, which does business in Colorado as CHP, to manage the referral and approval of medical care by outside specialists. *See Self v. Milyard*, No. 11-cv-00813-RBJ-CBS, 2012 WL 3704958, at *3 (D. Colo. July 31, 2012).

5

FURTHER ORDERED that, if Plaintiff fails to file an amended complaint that complies with this order within the time allowed, the Court may dismiss some or all of this action without further notice for the reasons discussed above.  It is

DATED September 2, 2015, at Denver, Colorado.

BY THE COURT:

s/ Gordon P. Gallagher

United States Magistrate Judge